UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| **TEAM HEALTH HOLDINGS, INC., TEAM HEALTH, LLC (F/K/A TEAM HEALTH, INC.),  TEAM FINANCE, LLC, AMERITEAM SERVICES, LLC, HCFS HEALTH CARE FINANCIAL SERVICES, LLC, AND QUANTUM PLUS LLC (D/B/A TEAMHEALTH WEST)**<br><br>      **Plaintiffs,**<br><br>v.<br><br>**IRONSHORE SPECIALTY INSURANCE COMPANY, AND ALLIANT INSURANCE SERVICES, INC.**<br><br>      **Defendants.** | **CIVIL ACTION NO. 5:22-CV-143**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Team Health Holdings, Inc., Team Health, LLC (f/k/a Team Health, Inc.), Team Finance, LLC, AmeriTeam Services, LLC, HCFS Health Care Financial Services, LLC, and Quantum Plus LLC (d/b/a TeamHealth West) (collectively "TeamHealth") file this complaint against Ironshore Specialty Insurance Company ("Ironshore") and Alliant Insurance Services, Inc. ("Alliant").

### NATURE OF THE CASE AND INTRODUCTION

1.    This case is for wrongfully withheld excess liability insurance coverage arising out of an underlying investigation demand and litigation against TeamHealth in the Eastern District of Texas (the "Hernandez Action," described in further detail below).[1]  In 2016, TeamHealth timely

---

[1] *United States ex rel. Hernandez, et al. v. TeamHealth Holdings, Inc., et al.*, No. 2:16-cv-00432-JRG.

**COMPLAINT** – Page 1

paid premiums for $20,000,000 in professional liability coverage to respond to and defend allegations just like the allegations in the Hernandez Action. TeamHealth purchased this coverage through Alliant, a professional insurance broker. This coverage consisted of $10,000,000 in primary coverage from AIG Specialty Insurance Company ("AIG") and $10,000,000 in follow-form excess coverage from Ironshore. When TeamHealth needed that coverage to respond to and defend the allegations in the Hernandez Action, AIG paid its portion but Ironshore refused, wrongfully feigning ignorance of the Hernandez Action. Ironshore ignored its obligations without any reasonable basis and left TeamHealth without the benefit of the excess coverage it had paid for and was relying upon to respond to allegations in the Hernandez Action.

2. In 2016, TeamHealth timely provided notice of the Hernandez Action as required by the AIG Policy (primary) and Ironshore Policy (follow-form excess). Moreover, in 2017, years before TeamHealth asked Ironshore to pay anything, Ironshore received additional written notice of the Hernandez Action through loss runs that it required as a condition to renewal of the next year's Ironshore Policy.

3. As the name suggests, follow-form excess insurance coverage is an additional layer of insurance coverage that provides a backstop and is needed only when the primary policy limits are exhausted. The potential for that exhaustion of the AIG Policy did not arise until early 2021, years after Ironshore had notice.

4. In 2021, when exhaustion of the AIG primary policy limits became likely, TeamHealth finally needed Ironshore's coverage to resolve the Hernandez Action. TeamHealth provided notice to Ironshore again and requested its participation and coverage for defense and resolution costs.

**COMPLAINT** – Page 2

5. Instead of paying what it owed under its excess insurance policy that followed the AIG primary coverage, Ironshore stalled and then denied coverage.

6. After years of litigation and notice of the Hernandez Action, Ironshore based its denial on its self-serving interpretation of notice and consent provisions despite contrary facts, law, and logic.

7. TeamHealth has tried to resolve this matter with Ironshore and followed policy requirements, including completing mediation, and allowing 90 days to pass following the completion of the mediation.  Further efforts at resolution without litigation would be futile, and this litigation is the only remaining option for TeamHealth.

8. TeamHealth is entitled to $10,000,000 in insurance proceeds, statutory and bad faith damages under applicable law, and any additional expense, loss, and injury caused by Ironshore's refusal to pay.

9. Alternatively, TeamHealth is entitled to recovery of $10,000,000 from Alliant because TeamHealth's damages were caused by Alliant's breach of its obligations to TeamHealth. If Ironshore can avoid its coverage obligations, Alliant failed in its obligations as a reasonable insurance professional, as a fiduciary, and by contract, to manage TeamHealth's claim reporting process and other aspects of TeamHealth's insurance program, resulting in damage to TeamHealth.

## THE PARTIES

10. Team Health Holdings, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Knoxville, Tennessee.  Team Health Holdings, Inc. is identified as the named insured on the Ironshore excess policies described in more detail below.

11. Team Health Holdings, Inc. is the parent company of TeamHealth, LLC (f/k/a Team Health, Inc.), Team Finance, LLC, AmeriTeam Services, LLC, HCFS Health Care Financial

Services LLC, and Quantum Plus LLC (d/b/a TeamHealth West), defendants in the Hernandez Action and insureds under the relevant insurance policies. As set forth in Paragraphs 12-16, the citizenship of each of those LLCs ultimately flows to Team Health Holdings, Inc. directly or through Team Finance, LLC.

12. TeamHealth, LLC (f/k/a Team Health, Inc.) is a single-member limited liability company, and that single member is Team Finance, LLC.

13. Team Finance, LLC is a single-member limited liability company, and that single member is Team Health Holdings, Inc.

14. AmeriTeam Services, LLC is a single-member limited liability company, and that single member is Team Finance, LLC.

15. HCFS Health Care Financial Service, LLC is a single-member limited liability company, and that single member is Team Radiology, LLC, whose single member is Team Finance, LLC.

16. Quantum Plus, LLC is a single-member limited liability company, and that single member is Southwest Florida Emergency Management, LLC, whose single member is Team Finance, LLC.

17. Defendant Ironshore Specialty Insurance Company is a corporation organized under the laws of Arizona with its principal place of business in Massachusetts.

18. Defendant Alliant Insurance Services, Inc. is a corporation organized under the laws of California with its principal place of business in California.

**COMPLAINT** – Page 4

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship among the parties, and the amount-in-controversy exceeds $75,000.

20. This Court has personal jurisdiction over Ironshore because this action arises from Ironshore's contracting to insure risk in Texas, and the Ironshore Policy contains a Service of Suit Endorsement whereby Ironshore agrees to submit to the jurisdiction of any court of competent jurisdiction within the United States.

21. This Court has personal jurisdiction over Alliant because Alliant sold the AIG and Ironshore policies from Alliant's office in Texas and to insure risk in Texas. Alliant also entered into the Alliant Contract through an officer in the Alliant office in Texas.

22. This Court also has personal jurisdiction over both defendants because TeamHealth is seeking coverage for legal fees or settlement proceeds paid to resolve a suit that was pending in federal court in the Eastern District of Texas, the Hernandez Action, and alleges that each Defendant breached its duties related to defense of that litigation in the Eastern District.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## TEAMHEALTH'S LIABILITY INSURANCE AND THE POLICIES

24. TeamHealth is a collection of integrated healthcare companies with operations nationwide, including within the Eastern District of Texas. TeamHealth is committed to improving healthcare through its commitment to quality and safety. Physicians are empowered to act on what they believe is right for their patients, supported by TeamHealth's investment in learning and development. TeamHealth is committed to providing the best places for patients to receive care across the country.

25. Liability insurance is an important part of TeamHealth's risk management program. Like any healthcare provider, TeamHealth must manage the risk of liability exposure, including the cost to defend and resolve unfounded allegations related to TeamHealth's services and practices.

26. In 2016, TeamHealth was working with Alliant to identify and procure the best insurance, including professional liability coverage tailored to TeamHealth's specific needs. By contract, attached as Exhibit 1, Alliant agreed to manage TeamHealth's insurance program, including its claim reporting process.

27. For the insurance year 2016-2017, Alliant recommended and TeamHealth agreed to purchase two layers of specialized Professional Liability Insurance, including $10,000,000 of primary coverage from AIG and $10,000,000 of excess coverage from Ironshore.

### *AIG Policy*

28. AIG issued Policy No. 01-285-30-91, which is a primary professional liability policy for the policy period of March 31, 2016 to March 31, 2017 ("AIG Policy").

29. The AIG Policy has a limit of $10,000,000.

30. The AIG Policy has a retention of $1,000,000.

31. A true and correct copy of the AIG Policy is attached hereto as Exhibit 2.

32. TeamHealth paid $300,000 in premiums for the AIG Policy.

### *Ironshore Policy*

33. Ironshore issued Policy No. 0002711900, which is an excess professional liability policy for the policy period of March 31, 2016 to March 31, 2017 ("Ironshore Policy").

34. The Ironshore Policy is a follow-form policy that follows and incorporates provisions from the AIG Policy.

35. The Ironshore Policy has an attachment point of $10,000,000 above the AIG Policy and a policy limit of $10,000,000.

36. A true and correct copy of the Ironshore Policy is attached hereto as Exhibit 3. TeamHealth paid $172,500 in premiums for the Ironshore Policy.

37. The Ironshore Policy follows the form of the AIG Policy, except as expressly provided in the Ironshore Policy. With respect to notice of a claim, the Ironshore Policy provides "the Insureds shall give to the **Insurer** as soon as practicable **written notice** of any Claim in accordance with the terms, conditions, definitions, exclusions and limitations of the **Followed Policy.**" *Id.* at 6 (emphasis added).

38. The Ironshore Policy also defines "Insurer" as having the meaning attributed in the Declarations Page of the Policy, which identifies AIG as "Insurer" and the AIG Policy as the Followed Policy. *Id.* at 5.

39. The Ironshore Policy works in tandem with the AIG Policy and, under the Ironshore Policy, notice to AIG complies with the Ironshore Policy's notice requirements. Alternatively and at a minimum, it is reasonable to interpret the Ironshore Policy that notice to AIG is notice in compliance with the Ironshore Policy. Moreover, TeamHealth also had the reasonable expectation under Ironshore's policy language that consent by AIG to TeamHealth's defense and settlement of a claim was sufficient.

40. TeamHealth, AIG and Ironshore agreed to renew the AIG Policy and Ironshore Policy again for the 2017-18 policy years.

41. Ironshore had knowledge of the Hernandez Action before confirming renewal.

42. Ironshore relied upon that knowledge of the Hernandez Action before confirming renewal of the Ironshore Policy.

**COMPLAINT** – Page 7

## THE HERNANDEZ ACTION

43. On April 25, 2016, Caleb Hernandez and Jason Whaley (collectively, the "Relators") filed a *qui tam* action, under seal, in the U.S. District Court for the Eastern District of Texas, captioned *United States ex rel. Hernandez, et al. v. TeamHealth Holdings, Inc., et al.*, No. 2:16-cv-00432-JRG, pursuant to the *qui tam* provisions of 31 U.S.C. § 3730(b).  The Hernandez sealed complaint was not served on TeamHealth in 2016.

44. In the Hernandez Action, Relators alleged claims against TeamHealth relating to billing for emergency services that fell within the scope of coverage provided by the AIG Policy and followed by the Ironshore Policy.

45. On October 25, 2016, TeamHealth received a Civil Information Demand ("Demand") relating to the Hernandez Action.

46. That same day, on October 25, 2016, TeamHealth provided notice of the Demand to Alliant and as required by the AIG Policy and Ironshore Policy.  Exhibit 4.

47. Ironshore knew or should have known of the Demand in 2016 and 2017.  For example, on June 5, 2017, TeamHealth, via Alliant, confirmed and provided loss runs of claims to Ironshore. Those loss runs included the Demand.  Exhibit 5 at 4.

48. In November 2017, Alliant again provided Ironshore with loss runs.  This second set of loss runs also included the Demand.  Exhibit 6.

49. On June 28, 2018, after investigating and analyzing the claims, the United States filed a notice of election to decline intervention in the Hernandez Action.  The litigation proceeded with the named plaintiffs only.

50. On September 24, 2018, TeamHealth was finally served with the Complaint in the Hernandez Action.

**COMPLAINT** – Page 8

51. On September 25, 2018, TeamHealth provided a copy of the Complaint in the Hernandez Action to AIG. Exhibit 7. Again, this was sufficient notice under the Ironshore Policy.

52. Ironshore failed to acknowledge or reserve any rights upon notice of the Demand or Hernandez Action. Ironshore knew or should have known of the Demand and Hernandez Action in 2016, 2017, 2018, 2019, and 2020.

53. TeamHealth, in conjunction with AIG, vigorously defended the claims in the Hernandez Action. The Relators were seeking more than $185,000,000.

54. The allegations in the Hernandez Action fall squarely within the coverage provided by the AIG Policy and, therefore, the Ironshore Policy.

**SETTLEMENT OF THE HERNANDEZ ACTION AND IRONSHORE'S BREACH**

55. While TeamHealth continued to deny the allegations in the Hernandez Action, it began to consider opportunities for resolution in light of the uncertainties of litigation. In early 2021, TeamHealth recognized that there might be a realistic opportunity for resolution for an amount in excess of the limits of the AIG Policy.

56. As a result and on April 7, 2021, TeamHealth provided Ironshore with additional information regarding its claim, notified Ironshore of the resolution opportunity, and asked Ironshore to engage in steps to complete and finalize the settlement, including payment of its policy obligations. Exhibit 8.

57. On April 13, 2021, Ironshore acknowledged TeamHealth's April 7, 2021 email. Exhibit 9. In that communication, Ironshore offered only a general reservation of rights. Ironshore did not expressly reserve any rights relative to TeamHealth proceeding with the settlement.

58. On May 13, 2021, TeamHealth sent an email to Ironshore attaching the above-referenced loss runs previously sent and stating, "TeamHealth expects Ironshore's prompt participation in the settlement and looks forward to its contribution." Exhibit 10.

59. Ironshore did not respond to the May 13, 2021 email and failed to timely engage in the ongoing settlement efforts. Instead, on information and belief, Ironshore engaged in efforts to identify a way to try to avoid its obligations under the Ironshore Policy.

60. Ironshore did not adequately advise TeamHealth by reservation of rights or otherwise that Ironshore would seek to rely upon consent provisions or any other provisions to avoid its obligations.

61. Ironshore knew that TeamHealth was expecting its cooperation and participation but failed to timely respond.

62. In July 2021, facing the uncertainty of trial and without support from Ironshore, TeamHealth completed and finalized a settlement of the Hernandez Action. AIG consented to and participated in the resolution. Ironshore continued to stonewall TeamHealth.

63. Per the Settlement Agreement, TeamHealth agreed to pay the United States an amount in excess of the AIG and Ironshore policy limits.

64. In defending the Hernandez Action, TeamHealth also incurred reasonable and necessary Defense Costs, as defined by the AIG Policy and Ironshore Policy, in amounts that exceeded the policy limits when combined with the resolution amounts.

65. AIG paid its full $10,000,000 limit, reimbursing TeamHealth for a portion of Defense Costs and a portion of the costs of settlement, both covered losses under the AIG and Ironshore policies.

66. The Ironshore Policy provides coverage for an additional excess layer of $10,000,000 of Defense Costs or covered portions of the settlement, related to the Demand and the Hernandez Action.

67. On August 24, 2021, Ironshore formally denied coverage, again refusing to contribute its $10,000,000 policy limit to resolution of the Hernandez Action. A true and correct copy of the denial letter is attached hereto as Exhibit 11.

68. TeamHealth, again, demanded payment from Ironshore on March 29, 2022, but Ironshore continues its refusal to pay any of its $10,000,000 limit to TeamHealth.

69. TeamHealth has complied with all relevant policy conditions, including the Dispute Resolution provisions. On August 8, 2022, TeamHealth and Ironshore participated in an unsuccessful mediation, which terminated that same date.

70. TeamHealth now seeks relief in this Court.

## COUNT I – BREACH OF CONTRACT (AGAINST IRONSHORE)

71. TeamHealth repeats the allegations set forth above as if fully set forth herein.

72. The Ironshore Policy is a binding contract under which Ironshore was paid premiums in exchange for its contractual agreement to pay TeamHealth's losses for claims covered under the Ironshore Policy.

73. TeamHealth gave timely notice and has otherwise complied with all of the contractual obligations under the AIG and Ironshore Policies.

74. Ironshore breached the insurance contract by, inter alia, refusing to provide coverage up to $10,000,000 for the Demand and Hernandez Action, refusing to participate in the settlement of the Hernandez Action, and wrongfully denying its obligations under the AIG Policy and Ironshore Policy.

75. As a result of Ironshore's breach of the insurance contract, TeamHealth has suffered significant damages in amounts identified herein and to be proven at trial. In addition, TeamHealth has incurred attorneys' fees by Ironshore's breach of the insurance contract.

### COUNT II – BAD FAITH (AGAINST IRONSHORE)

76. TeamHealth repeats the allegations set forth above as if fully set forth herein.

77. Ironshore has breached the insurance contract by, *inter alia*, refusing to provide coverage up to $10,000,000 for the Demand and Hernandez Action, refusing to participate in the settlement of the Hernandez Action, and wrongfully denying its obligations under the AIG Policy and the Ironshore Policy.

78. Ironshore's refusal to pay was not done in good faith. Instead, Ironshore acted to delay, avoid, or reduce the size of a claim that is due to be paid out to TeamHealth, by inventing purported notice and consent issues. There is no legitimate basis for Ironshore's denial, and Ironshore's conduct is contrary to its obligations under Texas or Tennessee law, including the statutory bad faith provisions in those states.

79. Ironshore also breached its obligations to timely respond to TeamHealth in 2021 as set forth more fully above. When TeamHealth asked Ironshore to provide the coverage that TeamHealth paid for, Ironshore asked questions and then "ghosted" TeamHealth, leaving TeamHealth to fend for itself without Ironshore's coverage. Ironshore knew that a timely response was needed and required but disappeared only to show back up months too late and deny coverage outright based on its unreasonable notice defense.

80. On March 29, 2022, TeamHealth made a demand under Tennessee Code Annotated § 56-7-105(a) and the Texas Ins. Code, including §§ 541.060, 541.151, and 541.152.

### COUNT III – DECLARATORY JUDGMENT (AGAINST IRONSHORE)

81. TeamHealth repeats the allegations set forth above as if fully set forth herein.

**COMPLAINT** – Page 12

82. The Ironshore Policy is a binding contract under which Ironshore was paid premiums in exchange for its contractual agreement to pay TeamHealth's losses for claims covered under the Ironshore Policy.

83. As confirmed by AIG's payment of its limits under the AIG Policy, the Demand and Hernandez Action (and related Defense Costs and portions of the settlement amounts) are covered under the AIG Policy and the Ironshore Policy.

84. Ironshore has wrongfully denied coverage for the Demand and Hernandez Action under the Ironshore Policy, including refusing to pay any portion of the amounts due under the Settlement Agreement and refusing to pay any Defense Costs.

85. Pursuant to 28 U.S.C. § 2201, an actual controversy exists between TeamHealth and Ironshore regarding the rights, duties and liabilities under the Ironshore Policy, and Ironshore's denial of coverage. The controversy is of sufficient immediacy and magnitude to justify declaratory relief.

86. TeamHealth seeks a judicial determination of its rights and Ironshore's duties under the Ironshore Policy, and that Ironshore is obligated, pursuant to the terms of the Policy, to indemnify TeamHealth up to $10,000,000 relating to the Demand and Hernandez Action at issue here.

87. A binding judgment concluding the controversy should be entered by the Court.

**IN THE ALTERNATIVE,**
**COUNT IV – WAIVER, ESTOPPEL, AND PROMISSORY ESTOPPEL (AGAINST IRONSHORE)**

88. TeamHealth repeats the allegations set forth above as if fully set forth herein.

**COMPLAINT** – Page 13

89. Ironshore made a promise to provide insurance coverage to TeamHealth for the Demand and Hernandez Action. That promise is reflected in the language of the Ironshore Policy and the AIG Policy.

90. Ironshore's promise was definite enough to be enforced.

91. TeamHealth reasonably relied upon the promise and its reasonable expectations based on the language in the Ironshore Policy.

92. Despite its promise, Ironshore did not provide insurance coverage to TeamHealth as promised.

93. As a result of Ironshore's failure to provide insurance coverage, TeamHealth has suffered loss as described herein.

94. Ironshore is estopped from denying its coverage obligations based upon the promises in its Policy and its conduct as described in the allegations set forth above. In particular but without limitation, Ironshore had a duty to investigate and acquire relative to claims identified in loss runs. On information and belief, Ironshore issued renewal policies conditioned upon notice of TeamHealth's loss runs, including notice of the subject claim. Ironshore waived or is estopped from denying coverage based on any argument that it was unaware of the subject claim.

95. Ironshore also failed to reserve rights or adequately reserve rights upon notice as set forth above and waived its right to deny coverage. That waiver includes Ironshore's failure to adequately reserve rights related to notice or consent when it responded to TeamHealth's April 7, 2021 Letter.

### IN THE ALTERNATIVE,
### COUNT V – BREACH OF CONTRACT (AGAINST ALLIANT)

96. TeamHealth repeats the allegations set forth above as if fully set forth herein.

97. The Alliant Contract, Exhibit 1, is a binding contract under which TeamHealth paid compensation to Alliant for professional insurance services, including but not limited to, management of TeamHealth's claim reporting process.

98. If Ironshore is successful in avoiding its coverage obligations for the Hernandez Action, TeamHealth alternatively pleads Ironshore's ability to avoid coverage would be based upon breaches of Alliant's obligations to manage TeamHealth's claims, including breach of contract for failing to provide timely notice to Ironshore as Ironshore alleges was technically required.

99. If Ironshore is successful in avoiding its coverage obligations for the Hernandez Action, then Alliant's breaches of its obligations caused TeamHealth significant damages in amounts identified herein and to be proven at trial.

**IN THE ALTERNATIVE,
COUNT VI – PROFESSIONAL NEGLIGENCE (AGAINST ALLIANT)**

100. TeamHealth repeats the allegations set forth above as if fully set forth herein.

101. Alliant held itself out to TeamHealth as an insurance professional and had a duty, or alternatively, assumed a duty, to manage TeamHealth's claim reporting process as a reasonable and prudent insurance professional.

102. If Ironshore is successful in avoiding its coverage obligations for the Hernandez Action, TeamHealth alternatively pleads Ironshore's ability to avoid coverage would be based upon breaches of Alliant's duty and obligations to manage TeamHealth's claims, including providing of timely notice to Ironshore.

103. If Ironshore is successful in avoiding its coverage obligations for the Hernandez Action, then Alliant's breaches of its duty and obligations caused TeamHealth significant damages in amounts identified herein and to be proven at trial.

## IN THE ALTERNATIVE,
## COUNT VII – BREACH OF FIDUCIARY DUTY (AGAINST ALLIANT)

104. TeamHealth repeats the allegations set forth above as if fully set forth herein.

105. Alliant held itself out to TeamHealth as an insurance professional through its actions and representations, had a fiduciary duty, or alternatively, assumed a fiduciary duty, to manage TeamHealth's claim reporting process as a fiduciary.

106. If Ironshore is successful in avoiding its coverage obligations for the Hernandez Action, TeamHealth alternatively pleads Ironshore's ability to avoid coverage would be based upon breaches of Alliant's fiduciary duty and obligations to manage TeamHealth's claims, including providing of timely notice to Ironshore.

107. If Ironshore is successful in avoiding its coverage obligations for the Hernandez Action, then Alliant's breaches of its fiduciary duty and obligations caused TeamHealth significant damages in amounts identified herein and to be proven at trial.

## IN THE ALTERNATIVE,
## COUNT VIII – INDEMNITY (AGAINST ALLIANT)

108. TeamHealth repeats the allegations set forth above as if fully set forth herein.

109. Alliant agreed in the Alliant Contract to indemnify and hold TeamHealth harmless from any loss, cost, damage, or expense (including reasonable attorney's fees) arising from the negligent acts or omissions of Alliant.

110. If Alliant is liable to TeamHealth on one or more of Counts V, VI, or VII, the Alliant also must indemnify TeamHealth and pay any loss, cost, damage, or expense (including reasonable attorney's fees) arising from Alliant's breaches.

111. If Ironshore is successful in avoiding its coverage obligations for the Hernandez Action, then Alliant's breaches of its duty and obligations caused TeamHealth significant damages in amounts identified herein and to be proven at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

A. A judgment in their favor against Ironshore, or alternatively against Alliant, on all counts of the Complaint;

B. A declaration that TeamHealth properly notified Ironshore of the Demand and Hernandez Action, and that Ironshore is obligated, pursuant to the terms of the Policy, to indemnify TeamHealth up to $10,000,000;

C. An award for compensatory damages in the amount to be determined at the trial in this cause;

D. An award against Ironshore for bad faith, including an award of compensatory, punitive, and statutory damages in the maximum amount allowed by law;

E. An award of TeamHealth's reasonable attorneys' fees and costs;

F. An award of pre-judgment and post-judgment interest, as permitted by law; and

G. Such other further relief as the law requires and the Court deems just and proper.

## JURY DEMAND

TeamHealth requests that all claims and causes of action raised in this Complaint against the Defendants be tried to a jury to the fullest extent possible.

Respectfully submitted,

*/s/ Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
Kyle R. Akin
Texas Bar No. 24105422
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: kakin@haltomdoan.com

and

J. Alexander Purvis (MSN 100673)
(*pro hac vice* forthcoming)
Bradley Arant Boult Cummings LLP
One Jackson Place
188 E. Capitol Street, Suite 1000
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Facsimile:  (601) 948-3000
Email: apurvis@bradley.com

E. Todd Presnell (TN Bar No. 017521)
(*pro hac vice* forthcoming)
Bradley Arant Boult Cummings LLP
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone:  (615) 252-2355
Facsimile:  (615) 252-6355
Email: tpresnell@bradley.com

**ATTORNEYS FOR PLAINTIFFS**